In the matter of ADAM VAN ALLEN, Receiver of the Bank of Albany.

A receiver being an officer of the court and subject to its direction, and being charged with responsible and often embarrassing duties, it is proper that he should, on suitable occasions, apply to the court for instructions.

The receiver of an insolvent moneyed corporation has all the powers and authority conferred by law upon the trustees of insolvent debtors, and is subject to all the duties and obligations imposed upon them.

Rights and duties of the receiver of an insolvent bank, in cases of mutual claims between the bank and parties dealing with it; 1. Where, at the time of the appointment of the receiver, debts exist owing to, and owing by the bank, and both due; 2. Where such debts exist, but on the one side or the other the debt has not become due, and particularly where the debt from the dealer or customer, to the bank, has not matured; 3. Where the demand is unliquidated; 4. Where the debt due to the bank is from a firm, or from several persons jointly, and the debt due from the bank is owing to only one or more of such persons, and not to all. Herein of the right of set-off.

THIS is an application by James B. Sanders, who has a deposit in the Bank of Albany to an amount exceeding a note of his held by said bank at the time of its insolvency, and about to mature, to direct the receiver to apply said note, at maturity, upon the account or debt due to the petitioner. The petition shows that the petitioner had been in the habit, for several years, of doing his banking business with said bank; that there were mutual credits between said bank and the petitioner; and that it was customary for said bank to charge the petitioner's notes, when they matured, to his account at the bank; that the petitioner applied to the receiver to do so in this instance, but the receiver declined, unless ordered by the court. These facts are not denied.

The receiver also applies, in his own behalf, for instructions as to his duty in this and similar and other cases.

The Bank of Albany was organized under the general banking law of April 18, 1838, and the acts amendatory thereof, and Mr. Van Allen was appointed receiver on the 13th day of May, 1861, under the act of April 5th, 1849. The receiver's petition further shows that he has now on hand, of the assets of the bank, in money, about $57,000,

which he has deposited to his credit in the Commercial Bank of Albany; that a large portion of the assets of the bank consists of discounted paper, some of which will require to be prosecuted in order to realize any thing therefrom; that Sheldons & Co. are indebted to the receiver in a note for $1250, held by said bank at the time of his appointment, which fell due on the 23d of May, 1861; that Sheldons & Co. at the same time had a credit on the books of said bank, as customers and depositors, to the amount of $999.57, which amount they claim to set off or apply upon said note, and upon payment of the balance to have said note delivered up; that other parties are similarly circumstanced, and make similar claims; and among others, Seth Crapo & Son, Joseph Clinton, Alexander Gray, James A. Wilson, Louis Spooner, James B. Sanders and Samuel Martin, who are depositors and customers doing business at said bank; the credits in some instances exceeding the amount of the debits, and in others being less; the debts being in some instances already due, and in others yet to mature; the debts being in some instances due from a mercantile firm, and the credits in the name of, and apparently belonging to, one of the individual members of said firm. Such an instance occurs in the case of a note made by R. O. Lawrence for $400, and a note made by D. N. Brownell for $387, both indorsed by and discounted for the firm of Lawrence & Higgins, of which firm W. Lawrence is, or lately was, a member; said firm being dissolved; and said W. Lawrence has a credit at said bank, as a depositor, to the amount of $555.77, which he claims to have set off and applied towards the payment of said notes.

The petition of the receiver farther shows that the title to a very considerable real estate lately belonging to said bank is now in said receiver, and the title to other real estate, by assignment or otherwise, in consequence of contemplated compromises with debtors, is likely to be vested in him; some of which is under mortgage, and which the receiver is anxious to sell, but yielding rent more than sufficient to pay the

In the matter of Van Allen.

interest upon the incumbrances, the expenses of management and agency, insurance and taxes, and not likely, in the present condition of monetary affairs, to sell immediately for prices satisfactory to the receiver, upon such credit as he is by law authorized to give.

The receiver asks the direction of the court, 1. In regard to the deposit of funds in the Commercial Bank, and the making of additional deposits there. 2. In regard to the debts and claims above mentioned, and others similarly circumstanced, and the allowance or disallowance of set-offs and counter-claims. 3. In regard to the prosecution of debts due to the bank or to the receiver, if not satisfactorily adjusted. 4. In regard to the disposition of the real estate, and authority to receive the rents and profits until favorable sales can be made, and the application of such rents and profits to the necessary expenses attending the management of said real estate, and keeping down the interest of the incumbrances thereon. 5. In regard to any further instructions in the matter of said receivership, deemed necessary by the court.

*C. M. Jenkins*, for the receiver.

*J. B. Sanders*, in person.

HOGEBOOM, J. Inasmuch as the receiver is an officer of the court and subject to its direction, and is charged with responsible and often embarrassing duties, it is proper that he should, on suitable occasions, apply to the court for instructions.

I. The most important subject on which the aid of the court is invoked is in regard to cases of mutual claims between the bank and parties dealing with it. These are of various characters. 1. Where, at the time of the appointment of the receiver, debts exist owing to, and owing by, the bank, and both due. 2. Where such debts exist, but on the one side or the other the debt has not become due, and more

commonly, if not universally, the debt from the dealer or customer, to the bank, has not matured. 3. Where the demand is unliquidated. 4. Where the debt due to the bank is from a firm or from several persons jointly, and the debt due from the bank is owing to only one or more of such persons, but not to all.

In case of debts actually due both from the bank to a customer or other party, and from such customer or other party to the bank, I do not see any reason why in equity, at the instance of either, and especially at the instance of the solvent party, who is most interested in making the application, the one claim should not be applied upon the other to extinguish the same, either wholly or as far as it will go. The real debt is only the difference between the two; and if a suit were brought, the application would be a matter of course, within the doctrine of set-off. Nor do I see that either (the demand being over due) could assign the claim held by him or it, so as to vest a superior title in the assignee. It would still be subject to the equities between the original parties. Such an application of the one demand upon the other is moreover, I think, directly within the provisions of law in regard to insolvent corporations. The receiver has all the powers and authority conferred by law upon the trustees of insolvent debtors, and is subject to all the duties and obligations imposed upon them. (2 *R. S.* 469, 470, §§ 68, 74. *Laws of* 1849, *ch.* 26, § 11.) One of these powers and duties is, that "where mutual credit has been given by a debtor and any other person, or mutual debts have subsisted between such debtor and any other person, the trustees may set off such credits or debts, and pay the proportion or receive the balance due." (2 *R. S.* 47, § 36.) The provision, though in terms permissive, was intended, I think, to be mandatory, upon the requisition of either party. So understood, I do not see why it will not embrace all cases of debts actually due at the time of the appointment of the receiver, to and from parties in the same capacity. They are

"mutually subsisting debts," that is, they subsist or exist in favor of each party against the other, in the same capacity. And this is substantially the definition given of mutual debts. (*Murray* v. *Toland*, 3 *John. Ch. R.* 569. *Dale* v. *Cooke*, 4 *id.* 11.) They are likewise "mutual credits given;" for credit has been given by the dealer or customer to the bank, for the amount of the deposit remaining uncalled for in the bank; and credit has been given by the bank to the party whose paper it has discounted and holds. It seems to me within the very terms of the act; and I feel it unnecessary to pursue the subject further, both for that reason and for the reason that it has been illustrated and enforced at length by Justice Marvin in a reported case, at special term, decided a few years since, and acquiesced in without appeal. (*Jones* v. *Robinson*, 26 *Barb.* 310.)

The case of debts not yet due, or where on the one side or the other—and especially in regard to the debt due from the dealer or customer to the bank—the debt is not due, is not identical in principle. In the case of negotiable paper thus situated, held by the bank, it is plain that the bank, before its failure, could successfully transfer it to a third person for value, if done bona fide; and I do not see why it could not legally be done by its assignee or receiver. It might not be considered a discreet or commendable exercise of the powers of a receiver, and yet it seems to me a legal and effective title would pass to a bona fide purchaser. Nevertheless, demands of this character seem also to be embraced within the description of mutual debts and mutual credits, before enumerated. And where the creditor of the bank, whose debt to the bank is not due, notifies the receiver of his wish to apply the same in partial or total satisfaction, as the case may be, of his claim arising from his deposit in the bank, and insists upon the same, I think the receiver should yield to it and make the application. In such an event, upon the receiver's refusal, I think the creditor would be entitled to commence an action for the purpose of compelling such application, and

could obtain a decree to that effect. (*Bradley* v. *Angel*, 3 *Comst.* 475.)

If it should so happen (which is doubtful and must be of very unfrequent occurrence) that the debt owing by the bank was not yet due, and the debt owing to the bank was by a debtor who was himself insolvent, which would present a case where it might be to the interest of the receiver to make the application, and to the interest of the other party not to do so, I do not think the receiver could make the application, or insist upon it; for it is not the province of the party whose debt is not due to insist upon having the benefit of the payment before maturity, which would be equivalent to altering the contract of the parties, and in effect allowing a party to commence a suit for the recovery of his demand before it was due. (*Bradley* v. *Angel*, 3 *Comst.* 475. *Keep* v. *Lord*, 3 *Duer*, 78.) There must in such case be some special circumstances — an agreement between the parties, express or implied, or a course of dealing between the parties leading clearly to the inference that such was their intention or expectation — or some other controlling equities — to justify such a course.

Where the debt is unliquidated and incapable of liquidation without the aid of a jury or of extrinsic evidence, the right of set-off is not absolute, but in equity must depend upon the circumstances of the case. It does not come within the statute of set-off. At the same time the receiver would not be justified in interposing any unconscientious obstacles to the liquidation of the demand, or with unseasonable haste to press the collection of the claim due to the bank, with a view of excluding the set off. He must act in good faith, and adopt all proper and prudent measures to put the creditor's claim in the way of liquidation before the period of distribution. This is conscientious and just. (*Holbrook* v. *Receivers of American Fire Insurance Co.*, 6 *Paige*, 220.)

Where the debts are not due to and from the same persons in the same capacity, the right of set-off does not exist.

Therefore where, on the one side, the debt due to the bank is due from a firm or from several persons jointly, and the credit belongs to an individual, or vice versa, equity does not require or justify an application of the rule of set-off. It cannot be said, in any just sense, that these are mutual debts or credits, nor would, I think, an assignment of the demand by the creditor of the bank, after the appointment of the receiver, so as to vest the title to such demand in the same person or persons who are indebted to the bank, and having that object directly in view, in order to accomplish a set-off, have that effect. The rights of the receiver become fixed at the time of his appointment; the rights of creditors of the bank represented by him then attach; and it would not be equitable to countenance any subsequent arrangement to give any one of them an undue preference over the others. Parties must stand or fall by the condition of things in existence at the time of the appointment of the receiver, unless special equities exist. This principle does not, however, prevent the application of the doctrine of set-off, where the credit equitably and in reality belongs to the same persons from whom the debt is owing, or where it is established, or is obvious, from the dealings of the parties, that their contract or intention was to apply the one in extinguishment of the other. In short, special circumstances may, in this as in other cases, exist to take the case out of the operation of the general rule. (*Dale* v. *Cooke,* 4 *John. Ch.* 11. *Barber* v. *Spencer,* 11 *Paige,* 517. *Mollan* v. *Griffith,* 3 *id.* 402. *Holbrook* v. *Receivers of American Fire Insurance Co.,* 6 *id.* 220.)

II. The other subjects upon which the directions of the court are sought present no real difficulty. The Commercial Bank of Albany is represented to be in good standing and of unquestionable soundness, and may therefore be regarded, until further order, as a proper place of deposit for the trust funds in the hands of the receiver.

The prosecution of debts due to the bank, and the determination which and when to prosecute may, except in spe-

cial cases, with propriety be left to the sound discretion of the receiver. Such is also the general rule of the court. (*Rule* 92.)

The present and prospective disposition of the real estate, which the receiver proposes to make, seems to be dictated by a sound discretion, and is approved.

No further special instructions seem, for the present, to be necessary.

[ALBANY SPECIAL TERM, May 28, 1861. *Hogeboom*, Justice.]